[Nos. 39645, 39758.    Department One.    February 20, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN W. VALPREDO, *Appellant.*

JOHN W. VALPREDO, *Petitioner*, v. JACK D. PORTER, *as Sheriff of King County, Respondent.**

*Arthur D. Keil*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *David W. Hotchkin*, for respondent.

*Reported in 450 P.2d 979.

McGovern, J.—Defendant was charged with the crime of attempted grand larceny, tried before a jury and found guilty. He now appeals from the judgment and sentence entered on that verdict. Considered contemporaneously herewith is defendant's petition for a writ of habeas corpus, presenting to this court basically the same issues as those raised on the appeal.

The facts are not in dispute. Defendant was observed in the act of removing several pistols from a gun case in the Ernst Hardware Company store, downtown Seattle, and attempting to conceal them on his person. Apprehended as he started to leave, defendant was taken to a small office within the store. Three pistols, property of Ernst Hardware Company, were taken from him and the police were called.

While awaiting the arrival of the police, the store employees informed the defendant that he need not say anything and that if he did, such statements could be used against him in a court of law. He was further advised that he was entitled to call his attorney and that a store employee would do so for him if he wished. Defendant declined the offer. He was not told, however, that he was entitled to free legal counsel if he was indigent and that he was also entitled to have counsel with him at the time of interrogation. He was in fact indigent.

Following this limited advice, the store employees then questioned the defendant and obtained from him several damaging statements and admissions. Later, when in police custody, the defendant was fully advised by the police of his constitutional rights of silence and legal counsel. Thereafter, he made additional statements and admissions which, together with those made to the store employees, were considered by the trial court pursuant to CrR 101.20W(a), RCW vol. 0.[1] All such statements and admissions were held by the trial court to be admissible and, during the trial, most of them were admitted in evidence.

[1]CrR 101.20W(a) provides:

"In every criminal case in which a confession or confessions of the accused are to be offered in evidence, the judge, either at the time of the trial or prior thereto, shall hold a hearing, in the absence of the

Defendant argues that his statements and admissions to the store employees should not have been admitted because those statements were made before he was advised of his right to have free legal counsel with him during that interrogation. Thus, he places squarely before this court the question of whether the protective measures created by the fifth amendment to the federal constitution and as enunciated by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966), are applicable when an accused is interrogated by, and makes incriminating statements to persons, other than officers of the law.

■ We think not. In fact, nothing can justify an interpretation of *Miranda* to a point where its rules would include the interrogation process of an accused by an apprehending shopkeeper not regularly engaged in law enforcement work. To hold otherwise would be to assign an intent to the majority opinion of the case that cannot logically be justified in reason. We decline to do so.

The hope of *Miranda* was to eliminate those confessions which are the product of an emotionally impaired state of mind and thus construed to be involuntary confessions. It was conceived by the court that a legally uneducated and unrepresented accused is no match for the skilled examining officer in the compelling atmosphere of the police interrogation room. The court felt that innumerable confessions have been uttered under those circumstances, not because the accused wanted to confess but because he was then incapable of resisting the overpowering force of government. The court concluded that confessions thus given constituted confessions extracted against the will of the accused and thus taken in violation of the accused's Fifth Amendment right of silence.

To give, then, to the accused the armament with which to resist that psychologically impelling power of authority,

---

jury for the purpose of determining whether, in the light of the surrounding circumstances, the confession was voluntary, and, therefore admissible. A court reporter shall record the evidence adduced at this hearing."

the court laid down the rule that an accused must be aware of his right to legal counsel at the time of interrogation. For, the court said, without knowledge of such right the accused cannot make a free and deliberate decision to speak or not. It was felt that the strength to resist is asserted only when the accused is possessed of such information. If thereafter he elects to speak, then his statements are truly voluntary.

This armament for resistance, however, relates only to the government's promptings to speak. It is not needed to fight off the unskilled inquiries of the hardware store merchant. That our high court believed this to be true is evident. It was said in *Miranda* that:

> The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to *police interrogation* . . . . (Italics ours.) p. 477.

and

> The whole thrust of our foregoing discussion demonstrates that the Constitution has prescribed the rights of the individual *when confronted with the power of government* when it provided in the Fifth Amendment that an individual cannot be compelled to be a witness against himself. (Italics ours.) p. 479.

And

> Because of the nature of the problem and because of its recurrent significance in numerous cases, we have to this point discussed the relationship of the Fifth Amendment privilege to *police interrogation* . . . . (Italics ours.) p. 491.

The Supreme Court of Nevada recently considered the same question in *Schaumberg v. State,* 83 Nev. 372, 432 P.2d 500 (1967), *post Miranda.* That court said:

> [O]ur attention is focused on whether the substance of Escobedo v. Illinois, 378 U.S. 478 (1964), and the admonitions of Miranda v. Arizona, 384 U.S. 436 (1966), apply when confessions or admissions otherwise admissible are given to persons who are not officers of the law nor their agents. We think not.

The purport of Escobedo and Miranda is to prevent oppressive police tactics which violate individual rights and produce involuntary confessions. Though Miranda said there can be no doubt that the Fifth Amendment privilege is available to protect persons from being compelled to incriminate themselves in all settings in which their freedom of action is curtailed, it is clear that the thrust of the decision was aimed against the "potentiality for compulsion" (Miranda v. Arizona, supra, at 457) found in custodial interrogation initiated by police officers. p. 374.

We agree with the Nevada court and find defendant's assignment of error to be without merit.

Equally failing is his next assignment of error. He contends that incriminating statements made by him to the police, after being fully advised of his rights to counsel and silence, were made only because of his prior statements to the store employees. He claims that he would not have made those statements to the police if he had not uttered the prior admissions. He then postulates the theory that if the prior admissions to the store employees are not admissible, then neither are those made to the police. Having found that defendant's statements to the store employees were in law admissible, defendant's argument fails for lack of logical premise and is therefore not considered on the merits.

And, finally, defendant contends that he is entitled to a new trial because the court erred in not declaring a mistrial when evidence of his prior crimes was introduced by a state witness. The pertinent testimony was as follows:

Q. (By Mr. Berner) He did admit to having taken the three pistols? A. Yes. Q. Did he say anything else with respect to the occurrence? A. Yes, sir. Q. What did he say? A. He said he attempted to take five pistols and felt he was greedy, and that was why he didn't get away with it. He dropped two on the way out and figured this was why he got caught. He wanted to get back to Detroit and didn't have enough money to get back there and figured he could sell the pistols and thus get bus fare. Q. Did you have any further conversation with him? A. Yes, sir. Q. What was the further conversation? A. I

asked him how long he had been in town and he stated three or four days and I asked how he was supporting himself. Q. What did he say to you? A. He said he supported himself by boosting. Q. What does boosting mean? A. That is a slang term for shoplifting. Q. He stated that to you? A. Yes. Q. Did he say how long he had been boosting? A. He said for the past two years.

■■ The defendant failed to object to this testimony until the witness had completed his direct testimony, was cross-examined, excused and the following witness sworn and partly examined. The objection was not timely and need not be considered. *State v. Evans*, 57 Wn.2d 288, 293, 356 P.2d 589 (1960). Additionally, no error occurred. The trial court granted defendant's motion to strike. It also orally and by written instruction directed the jury to disregard that testimony. The prejudicial effect, if any, was thus eliminated. *State v. Salle*, 34 Wn.2d 183, 208 P.2d 872 (1949). We assume that the jury followed the court's admonition, no evidence to the contrary being shown. *Ketchum v. Wood*, 73 Wn.2d 335, 438 P.2d 596 (1968); *State v. Costello*, 59 Wn.2d 325, 367 P.2d 816 (1962). We note that defendant's counsel on this appeal was not his trial counsel.

The judgment on the verdict is affirmed and the petition for a writ of habeas corpus is denied.

HILL and ROSELLINI, JJ., and DONWORTH, J. Pro Tem., concur.

HALE, J. (concurring in the result)—I concur in the result of the majority opinion and would affirm the conviction on the elemental premise that the defendant's guilt was overwhelmingly proved without perceptible error. It occurs to me that this is the best possible basis for an affirmance.

The reason why defendant's incriminating statements to the store employees were properly received in evidence is that all material and relevant statements of a damaging nature made by a sane person, immediately before, after, or during the commission of a crime, are admissible as

admission against interest or as verbal acts constituting a part of the res gestae. This has been the law of evidence for several centuries and will remain so, I presume, for it is difficult to imagine a more convincing proof of guilt than a well corroborated confession or a series of damaging admissions against one's own interests.

Aside from concurring in the result, I agree with that part of the majority's thesis that *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966), is completely inapplicable for, as the majority makes clear, the statements sought to be excluded under *Miranda* were made to employees of the hardware store and not to police officers. But, since the accused was neither undergoing police interrogation nor in custody of police officers at the time he made the statements, a restatement of the so-called Miranda doctrine, in my judgment, contributes little to the rationale for affirmance and may lay down obiter dicta that will ultimately prove mischievous.

As I see it, *Miranda*—except for its inapplicability—has no relevance to Valpredo's predicament, and to make it the focus of discussion compounds the burgeoning mystique of that case. Accordingly, in my view, defendant's statements to the hardware store's employees were properly received without reference to *Miranda* under the familiar and long-established rules of evidence governing admissions against interest.

I find myself at odds, too, with what the majority opinion characterizes as the hope of *Miranda,* in saying that *Miranda* hoped to eliminate those confessions which are the product of an emotionally impaired state of mind, or because the accused was incapable of resisting the overpowering force of government. If the accused had been incapable of resisting the overpowering force of government, he would not have stolen the pistols in the first place because the overpowering forces of government would have kept him from them. Then, too, I think that anyone caught redhanded in the act of stealing pistols in a hardware store should be expected to experience a marked degree of what the

majority describes as emotional impairment. This temporary affliction—a compound of guilt, consternation, embarrassment and trepidation, and maybe even remorse—I think would hardly prevent the accused from speaking the truth—even though the judiciary may proclaim otherwise.

Also, I see some pitfalls in the majority's characterization of *Miranda* that "It was conceived by the court that a legally uneducated and unrepresented accused is no match for the skilled examining officer in the compelling atmosphere of the police interrogation room." Does *Miranda* apply where police officers are interrogating another policeman, a detective, a lawyer, a law professor—or, heaven forbid—a judge or an experienced criminal thoroughly versed in his rights? I think it questionable to suggest an overmatch in such instances.

Due process of law does not, in my judgment, require or authorize the judiciary to compel a fair match. If the purpose of *Miranda* was to equalize the contest between the police and suspect—assuming, arguendo, only that courts possess this power to equalize things—then this doubtful ambition would be achieved more readily by a judicial requirement that stupid police officers be assigned to conduct the interrogation. I find nothing in either the federal or state constitutions which purports to equalize the contest between police and suspect or that the interests of due process prevents highly intelligent officers from being detailed to interrogate less intelligent persons suspected of crime, or that the suspect is constitutionally entitled to be queried by officers of equal or less intelligence than himself.

With several parts of the majority opinion, however, including the result, I do agree. I agree that *Miranda* rests largely on judicial assumptions as to why persons confess; but these assumptions, I think, are the product of little aptitude and less genuine information. The psychologically impelling power of authority mentioned by the majority as the rationale supporting *Miranda,* it seems to me, is largely a figment of the judiciary's imagination—and one

completely repudiated every day in nearly every jailhouse and police station by both novice and hardened criminals who, as the saying goes, steadfastly "refuse to give the police the time of day."

If the courts are prepared to say as a matter of fact and law that when an accused, although in police custody but knowing full well that he may remain silent and that the police are powerless to harm him in any way if he does remain silent, and that the police cannot compel him to speak; and he is subjected to no physical force, pain, threats, drugs, or promises of reward whatever; and he suffers no physical discomforts arising from high or low temperatures, sleeplessness, hunger or thirst, but who, because of intelligent interrogation from the police and confronted by damning fragments of evidence, confesses or makes damaging admissions—if it be a judicial rule that the accused's will has been thus overcome and his confession is to be held involuntary as a matter of law—then, in my judgment, we have entered upon a wonderful world of judicial nonsense bearing little connection with reality and the sooner out of it the better.

With the appellate judiciary's current essay into the field of psychology, how long will the state's right to cross-examination survive? If a defendant, knowing full well his right to remain silent, nevertheless, elects to testify in open court, is he not subject to an even greater psychological coercion than when in the station house? How can the courts rationally hold that one's will has been overcome by what the courts call psychological coercion in the police station, and then, at trial, permit the same person to be subjected to the most grueling and penetrating cross-examination in open court when the witness well knows that, if he refuses to talk, the austere figure in the black robe on the elevated bench will consign him to close confinement for contempt, or if he speaks falsely to a long term of imprisonment for perjury?