Howard A. Levine, J.
The respondent has been accused of committing acts which, if committed by an adult, would constitute the crime of criminal mischief. The events leading to the filing of the petition against him took place during the evening of January 4, 1975, when a group of five Niskayuna High School students, who had been attending a school-sponsored athletic event, intentionally rolled over a 1974 Volkswagen in the school parking lot. The car received damage to its fenders, door handle and radio antenna and required extensive repairs, although no competent evidence of the value thereof was introduced. The owner of the damaged vehicle happened also to have been dean of students at the school.
Respondent’s participation in this incident was established beyond a reasonable doubt by the uncontradicted testimony of a witness who was one of the other boys involved and by an oral admission made to the same dean of students during an interview in his office at the school one month later. This was the only evidence introduced at the fact-finding hearing, however, and since the witness and respondent were accomplices, the legal sufficiency of the petitioner’s case rests on the admissibility of respondent’s oral statement. (Cf. Matter of Eric R. [Anonymous], 34 AD2d 402; Matter of Steven B., 30 AD2d 442.)
Respondent was given the opportunity for a full hearing on the issue of the voluntariness of the confession but chose to limit the scope of that inquiry to cross-examination of the dean of students. Based upon his entire testimony, I find beyond a reasonable doubt that although the dean might have been forceful in putting questions to the respondent, the brevity of the interview, and the other circumstances described by him established that the statement was made voluntarily.
Concededly, however, respondent was not advised of his constitutional rights before being questioned, and it is the contention of the Law Guardian that the holding of the Court of Appeals in People v Scott D. (34 NY2d 483), and other *1079 cases, compel the exclusion of his confession. That case held that school authorities are agents of the State and therefore subject to the prohibition of the Fourth Amendment of the United States Constitution regarding unreasonable searches and seizures as to students under their control. Respondent argues that as agents of the State, school authorities are similarly constrained in questioning students by the constitutional requirements of Miranda v Arizona (384 US 436).
In my view, respondent’s statement is admissible despite the absence of Miranda warnings, on two grounds. First, under the express language of the Supreme Court’s decision in Miranda, the mandate to advise the subject of his rights only applies to custodial interrogation. The test of whether a given interrogation is custodial, as adopted by the Court of Appeals in People v Rodney P. [Anonymous], (21 NY2d 1, 9), is an objective one, namely, was the subject physically deprived of his freedom of action in any significant way, or led to believe, as a reasonable man, that he was so deprived? The test is not whether the police considered the subject to be a "target” of their investigation, or what the suspect thought, but rather "what a reasonable man, innocent of any crime, would have thought had he been in the defendant’s position.” (People v Yukl, 25 NY2d 585, 589; People v Rodney P. [Anonymous], (supra); People v Lee, 33 AD2d 397.) Here, the interrogation took place at the school by a school official having no power of arrest, and following which respondent was permitted to leave, either upon the arrival of his parent, or to return to his classes following the questioning. Under these circumstances respondent could not reasonably have believed that he was in custody while being questioned alone by the dean of students.
Interrogation by non-police "state agents”, even at their official offices, generally has been held noncustodial in numerous cases. (See United States v Caiello, 420 F2d 471 [IRS agents]; United States v Stamp, 458 F2d 759 [IRS agents]; United States v Dalton, 465 F2d 32 [Veterans Administration investigators]; State of New Jersey v Graves, 60 NJ 441 [welfare fraud investigators]; Matter of Grand Jury Investigation, 362 F Supp 870 [asst. U.S. Attorneys]; People v Accavallo, 57 Misc 2d 264 [Labor Department agents].) And the interrogation of a student by a school principal was held noncustodial in People v Shipp (96 Ill App 2d 364).
Apart from the factual issues of whether the interrogation conducted here was custodial, I further hold that school *1080 officials interrogating students concerning misconduct occurring within the precincts of the school are not subject to Miranda, at least when not acting in concert with or as agents of the police, neither of which is present here. People v Scott D. (34 NY2d 483, supra) should not be extended to school interrogation because significant factual and policy distinctions exist between a school search of the person of a student and the questioning of a student concerning misconduct. An involuntary search of the person of a student involves the same intrusion upon privacy and affront to personal dignity when committed by a teacher as by a police officer. Yet, as pointed out above, the Miranda mandate becomes operative, even for police interrogation, only after the subject has been taken into custody, because "It is at this point that our adversary system of criminal proceedings commences”. (Miranda v Arizona 384 US 436, 477, supra.) Post-arrest police questioning undeniably is aimed at obtaining evidence leading to conviction of the subject and almost invariably leads to the initiation of formal criminal proceedings. School interrogation, on the other hand, is normally investigatory for disciplinary purposes, and only occasionally results in referral to the courts. Moreover, a school official is neither trained nor experienced in using the psychologically coercive techniques of the police so extensively described in Miranda. Thus, interrogation of a student by a school official is even less akin to police interrogation than is the questioning of a probationer by his probation officer at his office. Yet, in People v Ronald W. [Anonymous], (24 NY2d 732), the Court of Appeals rejected the imposition of Miranda warnings in that context. The court held (pp 734-735): "The questioning of the appellant was hardly the sort of incommunicado, police-dominated atmosphere of custodial interrogation and overbearing of the subject’s will at which the Miranda rule was aimed. The clearly stated objectives of education and rehabilitation which are always paramount in the relationship between the probation officer and the probationer * * * are totally foreign to the elements the Supreme Court addressed itself to in Miranda. * * * It is true that a probation officer is a 'peace officer’ (Code Crim. Pro., § 937), but, certainly, he is not a 'law enforcement’ officer within the spirit or meaning of Miranda v Arizona (supra). ”
Nor can one overlook the impact that the imposition of Miranda would have on the entire educational process, which *1081 today involves as much the teaching of social adjustment and remediation of behavioral problems , as it does the development of cognitive skills. Indeed, one would be hard put to construct an educational system where these functions can be performed if educators are not permitted to respond to student misconduct by putting questions. The Superior Court of Pennsylvania, in Commonwealth v Dingfelt (227 Pa Super 380, 323 A2d 145) graphically described the effect of introducing the "adversary system” into the classroom through Miranda as follows (323 A2d 145, 147): "School officials do stand in the position of loco parentis and as such are entitled to retain a degree of control over the school’s students and its environment. For these reasons they should not be limited to the degree that would result in making it necessary to warn students of their constitutional rights everytime a problem of discipline arose and especially when the problem of discipline occasions the knowledge of the commission of a crime. It would be utterly ridiculous for a teacher who confronted a student for throwing a rubber band across the classroom to be under a duty to give Miranda warnings before telling the student to empty his pockets.”
An additional issue was raised by the Law Guardian at the fact-finding hearing, namely, that the statement was also inadmissible because of the failure of the petitioner to give notice of his intention to introduce it as required in an adult criminal case under CPL 710.30. Under the authority of Matter of D. (Daniel) (27 NY2d 90), I hold that this requirement of the Criminal Procedure Law is not applicable to juvenile proceedings in the Family Court. In any event, the failure to give such notice could not have been prejudicial to the respondent since the petition itself refers to his oral admissions and at respondent’s initial appearance in court his attorney indicated his awareness that an alleged oral admission would be used at the trial.
I therefore conclude that respondent’s statement was admissible and based upon it and the other testimony introduced, I find that he did the acts alleged in the petition, which acts, if committed by an adult would constitute the crime of criminal mischief in the fourth degree.
The respondent is directed to appear before the court for a dispositional hearing on October 14, 1975, at 10:00 a.m. A probation investigation report is also ordered and the respon *1082 dent is requested to co-operate with the Department of Probation for purposes of such investigation and report.