[No. 13767–1–I.   Division One.   December 24, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY
E. WOLFER, *Appellant.*

*Eric J. Nielsen* of *Washington Appellate Defender
Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jean E. Kelley, Deputy,* for respondent.

DURHAM, C.J.—Gary Wolfer appeals from his conviction
in juvenile court for possession of stolen property in the

third degree. Wolfer alleges that certain incriminating statements admitted as evidence were both involuntary and obtained without *Miranda* warnings. He also asserts that he was improperly denied a CrR 3.5 hearing.

Between October 13 and 22, 1982, several videotapes were taken from a high school classroom in Federal Way. J. R. Sensenbach, employed by the security department of the Federal Way School District, investigated the incident. Sensenbach talked with several students, including Wolfer, Ron Fredericks and Tim Earwood. According to Sensenbach's testimony, Wolfer told him that he saw Fredericks take about four or five tapes from their third period classroom, and that Fredericks handed one of the tapes to Earwood, who in turn handed it to Wolfer. Wolfer stated that he placed the tape on the floor next to his desk before leaving class. Wolfer further stated that Earwood approached him the next day and asked him to hold three or four tapes for him because he was afraid he would get "busted for possession." Wolfer stated that he kept the tapes in his locker until Earwood retrieved them the next day. Wolfer also told Sensenbach that he thought the tapes were stolen when he placed them in his locker. Wolfer's statements were put into written form and signed by Wolfer.[1]

Wolfer was charged by information with possession of stolen property in the third degree, and a fact–finding hearing was held on July 15, 1983. At the outset of the hearing, Wolfer's counsel argued that a CrR 3.5 hearing was required to determine the admissibility of Wolfer's statements to Sensenbach, on the ground that as a school police officer, Sensenbach was "basically acting as an agent of the State". The trial court denied Wolfer's request without explanation.

At the fact–finding hearing, Douglas Fijalka, a student in

---

[1]Although Wolfer was cross–examined at the fact–finding hearing about his written statement, it was not introduced into evidence and is not part of the record on appeal.

Wolfer's third period class, testified that he observed Wolfer take one tape and put it in his coat. Although Fijalka did not actually see Wolfer take the tape from the classroom, he overheard a conversation between Wolfer, Fredericks and Earwood, the substance of which was the selling of tapes.

Sensenbach then testified as to Wolfer's statements made during the investigatory interview. Defense counsel's objection to this testimony "for the reasons stated earlier" was overruled. Sensenbach stated that the interview occurred in one of the school's administrative offices, and that he was "in and out" of the room, speaking alternately with several students. He stated that Wolfer appeared to understand his questions, was cooperative, and did not seem to be under the influence of any drug.

Wolfer's testimony differed from Sensenbach's. Wolfer testified that Earwood gave him some tapes the day *before* the incident in the classroom. He testified that although he thought Earwood's request was "kind of funny," he did not think that the tapes were stolen. Wolfer admitted that he took one tape during the third period class, but stated that he set it on the floor next to his desk before the class ended.

Wolfer also testified about the circumstances surrounding the interview with Sensenbach. Wolfer stated that he was questioned for about a half hour to 45 minutes with no one else present, that Sensenbach accused him of stealing the tapes, and that he denied it. He stated that Sensenbach got angry and started yelling, telling him that if he did not sign the statement, Sensenbach would make him sign it, and that he would "get in a whole bunch of trouble" if Wolfer did not tell Sensenbach that he did it. Wolfer testified that he "wasn't really afraid; I just didn't want to get in trouble for something I didn't do, so I went ahead and signed it." Wolfer further testified that he had smoked marijuana prior to Sensenbach's questioning, and that he thought it affected his ability to understand the conversation.

During cross examination, Wolfer was confronted with

the written statement which he apparently signed during the interview with Sensenbach. Wolfer acknowledged that his initials appeared next to explanations of his right to remain silent, his right to an attorney, and the fact that his statements could be used against him in court. Wolfer also acknowledged that his initials appeared next to a waiver of certain rights, which are not specified in the record before us. The record does not specifically reveal if all of the *Miranda* warnings were given to Wolfer.

At the conclusion of the hearing, Wolfer was convicted of possession of stolen property in the third degree, and this appeal followed. Findings of fact and conclusions of law were entered on July 27, 1984. The trial court specifically found, *inter alia,* that Wolfer's statements to Sensenbach were voluntary. The court also concluded as a matter of law that Sensenbach was not required to give *Miranda* warnings because he was not acting as an agent of a law enforcement agency.

Wolfer first contends that his statements to Sensenbach were involuntary. We disagree.

The voluntariness of a confession or admission is determined by examining the totality of the circumstances. *See Davis v. North Carolina,* 384 U.S. 737, 741–42, 16 L. Ed. 2d 895, 86 S. Ct. 1761 (1966); *State v. Fagundes,* 26 Wn. App. 477, 482, 614 P.2d 198, 625 P.2d 179 (1980). The test is if the defendant's will to resist was so overborne as to bring about a confession not freely self–determined. *Rogers v. Richmond,* 365 U.S. 534, 544, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961); *State v. Gilcrist,* 91 Wn.2d 603, 607, 590 P.2d 809 (1979). Although it is the State's burden to prove voluntariness, it need only do so by a preponderance of the evidence. *State v. Braun,* 82 Wn.2d 157, 162, 509 P.2d 742 (1973); *State v. Davis,* 34 Wn. App. 546, 550, 662 P.2d 78 (1983). Moreover, a trial court's determination that a confession was voluntary is binding on appeal when there is substantial evidence from which the trial court could find voluntariness by a preponderance of the evidence. *State v. Vannoy,* 25 Wn. App. 464, 467, 610 P.2d 380 (1980).

Here, substantial evidence exists to support the court's finding that Wolfer's statements were voluntary. Wolfer's claim of involuntariness is based upon his alleged intoxication and coercion by Sensenbach. It is well settled that intoxication alone does not, as a matter of law, render a defendant's statements involuntary. *State v. Turner,* 31 Wn. App. 843, 845–46, 644 P.2d 1224 (1982); *State v. Smith,* 15 Wn. App. 103, 107, 547 P.2d 299 (1976), *cert. denied,* 429 U.S. 1065 (1977). Although Wolfer testified that he was "high" and disoriented, Sensenbach testified that Wolfer was cooperative and appeared to understand the questions put to him. Moreover, Wolfer's father testified that he did not smell marijuana on Wolfer's breath after his son returned home from the questioning.

The trial court found that Wolfer's allegation of coercion by Sensenbach was not credible. In so doing, the court relied upon Wolfer's cooperation during the questioning, and the fact that Wolfer's signed statement stated that it was true and signed of his own free will. Accordingly, we are persuaded that there is substantial evidence in this record from which a trial court could have found that voluntariness was established by a preponderance of the evidence. *Vannoy,* 25 Wn. App. at 467.

Wolfer next argues that the trial court improperly denied his request for a CrR 3.5 hearing. Again, we disagree.

■ CrR 3.5 provides a mechanism which allows a defendant to have the voluntariness of an incriminating statement determined in a preliminary hearing.[2] Although CrR 3.5 is not itself of constitutional magnitude, *State v. Fanger,* 34 Wn. App. 635, 637, 663 P.2d 120 (1983), the rule was enacted to implement the constitutional requirement of *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A.L.R.3d 1205 (1964). In *Jackson,* the Supreme

---

[2]CrR 3.5 provides in relevant part:

"(a) **Requirement for and Time of Hearing.** When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible."

Court held that due process requires that a defendant be afforded the right to a hearing on the voluntariness of a confession prior to its admission at trial. The rationale articulated by the Court was that a lay jury may find it difficult to accept the notion that an otherwise trustworthy confession must be excluded if it is involuntary. *Jackson,* 378 U.S. at 381–83. Accordingly, most courts have held that there is no need for a separate voluntariness hearing in the case of a bench trial, reasoning that a judge is presumed to rely only upon admissible evidence in reaching a decision. *See, e.g., United States v. Martinez,* 555 F.2d 1269 (5th Cir. 1977); *United States ex rel. Placek v. Illinois,* 546 F.2d 1298 (7th Cir. 1976); *In re Appeal in Maricopa Cy. Juvenile Action J–84357,* 118 Ariz. 284, 576 P.2d 143 (Ct. App. 1978); *M.A. v. State,* 384 So. 2d 740 (Fla. Dist. Ct. App. 1980); *People v. Fultz,* 32 Ill. App. 3d 317, 336 N.E.2d 288 (1975); *People v. Brown,* 24 N.Y.2d 168, 247 N.E.2d 153, 299 N.Y.S.2d 190 (1969). *Contra, United States ex rel. Spears v. Rundle,* 268 F. Supp. 691 (E.D. Pa. 1967), *aff'd on other grounds,* 405 F.2d 1037 (3d Cir. 1969); *United States ex rel. Owens v. Cavell,* 254 F. Supp. 154 (M.D. Pa. 1966). The Washington courts also presume that evidence is considered by a trial judge only for its proper purpose, *State v. Bell,* 59 Wn.2d 338, 360, 368 P.2d 177, *cert. denied,* 371 U.S. 818 (1962); *State v. Maesse,* 29 Wn. App. 642, 649, 629 P.2d 1349 (1981). Accordingly, the trial court did not err in denying Wolfer's request for a CrR 3.5 hearing.[3] *See State v. Rice,* 24 Wn. App. 562, 568, 603 P.2d 835 (1979) (ques-

---

[3]We do not intend to suggest, however, that a CrR 3.5 hearing is not advisable as a matter of sound judicial policy even in bench trials. Holding a separate hearing, even if just prior to trial, avoids the potential awkwardness of the court admitting a confession during the testimony of the first witness on voluntariness, only to strike it after other witnesses have testified on that issue. *M.A. v. State,* 384 So. 2d 740, 741 n.2 (Fla. Dist. Ct. App. 1980). A separate hearing will also reduce any confusion over whether a defendant is submitting testimony on the merits or simply giving evidence on voluntariness. *M.A. v. State, supra.* A separate hearing will always help the parties, as well as the trial court, segregate the issues of voluntariness and culpability, and can only result in a better, more complete, record on appeal.

tioning if CrR 3.5 applies to bench trials).

Finally, Wolfer contends that his statements to Sensenbach were made without proper advisement of his rights under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Wolfer argues he was subject to custodial interrogation and that, because Sensenbach was an agent of the State, he was entitled to *Miranda* warnings. Again, we disagree.

■ The now familiar *Miranda* warnings are essentially procedural safeguards intended to insure that confessions obtained during interrogation are not the product of "the overbearing compulsion . . . caused by isolation of a suspect in police custody." *United States v. Washington,* 431 U.S. 181, 187 n.5, 52 L. Ed. 2d 238, 97 S. Ct. 1814 (1977). Accordingly, the Supreme Court has emphasized that *Miranda* "does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Roberts v. United States,* 445 U.S. 552, 560, 63 L. Ed. 2d 622, 100 S. Ct. 1358 (1980).

The Washington Supreme Court has only once considered if *Miranda* applies to interrogation by individuals other than law enforcement personnel. In *State v. Valpredo,* 75 Wn.2d 368, 450 P.2d 979 (1969), the court held that private retail store security guards are not required to give *Miranda* warnings. In so doing, the court repeatedly emphasized that *Miranda* addressed the coercive atmosphere inherent in custodial interrogation by police officers:

> This armament for resistance, however, relates only to the government's promptings to speak. It is not needed to fight off the unskilled inquiries of the hardware store merchant. That our high court believed this to be true is evident. It was said in *Miranda* that:
>> The principles announced today deal with the protection which must be given to the privilege against self–incrimination when the individual is first subjected to *police interrogation.* . . . (Italics ours.) p. 477.
> and
>> The whole thrust of our foregoing discussion demon-

strates that the Constitution has prescribed the rights of the individual *when confronted with the power of government* when it provided in the Fifth Amendment that an individual cannot be compelled to be a witness against himself. (Italics ours.) p. 479.
And

Because of the nature of the problem and because of its recurrent significance in numerous cases, we have to this point discussed the relationship of the Fifth Amendment privilege to *police interrogation. . . .* (Italics ours.) p. 491.

*Valpredo,* 75 Wn.2d at 371 (quoting *Miranda v. Arizona, supra*). Indeed, the court expressly framed the issue before it as follows:

[Appellant] places squarely before this court the question of whether the protective measures created by the fifth amendment to the federal constitution and as enunciated by the United States Supreme Court in *Miranda . . .,* are applicable when an accused is interrogated by, and makes incriminating statements to persons, *other than officers of the law.*

(Italics ours.) *Valpredo,* 75 Wn.2d at 370.

We read *Valpredo* to hold that *Miranda* warnings need not be given by other than law enforcement officers. While it could be argued that Sensenbach was an agent of the State, we are unpersuaded that such status alone gives rise to the duty to provide *Miranda* warnings. We believe that the applicable test was articulated by the California Court of Appeals in *People v. Wright,* 249 Cal. App. 2d 692, 694–95, 57 Cal. Rptr. 781, 782 (1967):

It does not matter that a particular employee's duties may be confined to the protection of persons and property on his employer's premises or that his employer may be the state, a political subdivision thereof or a local entity. What does matter is whether he is employed by an agency of government, federal, state or local, *whose primary mission is to enforce the law.*

(Footnotes omitted. Italics ours.) Here, although Sensenbach was obviously charged with the responsibility of protecting people and property on the premises of the Federal

Way School District, he was not employed by an entity whose primary responsibility is law enforcement.[4]

The judgment is affirmed.

RINGOLD and CORBETT, JJ., concur.

Review denied by Supreme Court April 5, 1985.

---

[4]We note that courts in other jurisdictions have uniformly concluded that *Miranda* does not apply to interrogation by school personnel. *See Boynton v. Casey,* 543 F. Supp. 995 (D. Me. 1982); *W.B. v. State,* 356 So. 2d 884 (Fla. Dist. Ct. App. 1978); *People v. Shipp,* 96 Ill. App. 2d 364, 239 N.E.2d 296 (1968); *Doe v. State,* 88 N.M. 347, 540 P.2d 827 (1975); *In re Brendan H.,* 82 Misc. 2d 1077, 372 N.Y.S.2d 473 (1975).