[No. 20617-3-III.   Division Three.   December 19, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. TIFFANY JUEL HERITAGE, *Appellant*.

592

Cece L. Glenn, for appellant.

Steven J. Tucker, Prosecuting Attorney, and Kevin M. Korsmo and Andrew J. Metts III, Deputies, for respondent.

KATO, J. — Tiffany J. Heritage appeals her juvenile court conviction for possession of drug paraphernalia. She contends the court improperly concluded that city park security guards were not agents of the state when they detained her. We agree and reverse and remand for retrial or dismissal.

On June 18, 2001, two security officers patrolling Spokane's Riverfront Park saw four people in an area known as a "hot spot" for questionable activities. Clerk's Papers (CP) at 29. The unchallenged findings[1] of the juvenile court state:

> 6.   ... [The security officers] observed an individual identified as Aaron Maxwell on a bench facing them. ... The officers saw Mr. Maxwell smoking what was readily observable as a marijuana pipe. As the officers approached the group, within 20 to 30 feet, both officers testified that they detected the distinct odor of burning marijuana. ...

---

[1] Ms. Heritage has not assigned error to the findings, which therefore are treated as verities. See State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

7. When the Officers approached the group, Mr. Maxwell immediately put the pipe to his side and cupped his hand over it when he saw the officers. An Altoids box was also observed on the ground near Mr. Maxwell. The officers told Mr. Maxwell that they had seen what he had been doing. They also told him that they were not police officers and that no one was going to be arrested by either officer. At this time, Officer Jensen was within approximately 8 feet of the entire group of four people and Officer Conley was within arm[']s length and initially behind the group when both officers made these statements. The officers told the entire group that they were not police officers, that they needed to ask them some questions and that they would get them on their way. Some members of the group expressed dissatisfaction with Mr. Maxwell in his failure as the lookout for the group. At no time during the contact both officers had with the four individuals was there any display of handcuffs or pepper spray nor were there any sort of forceful actions designed to detain anyone. Everyone in the group was told that they were not under arrest and were never told they were being detained, other than that they were going to be asked questions and would they please answer them. The court finds no indicia of any detention whatsoever.

8. In the course of the contact, the officers asked Mr. Maxwell "is that your marijuana pipe?" When Mr. Maxwell denied that it was his pipe, the officers asked the question of the entire group "Whose marijuana pipe is it?" "We're Park Security, let's move it along." The officers explained that it is their experience that a pipe being used to smoke marijuana might belong to another person on the group other than the person who had the marijuana. The defendant, TIFFANY HERITAGE, said, "It's my pipe."

CP at 29-30.

Using a cell phone, one of the security officers then called Spokane police, who arrived within five minutes and arrested Ms. Heritage.

Ms. Heritage was charged with possession of drug paraphernalia. She moved to suppress the evidence seized and her statement, arguing the security officers were state actors and their questioning and detention were unlawful.

After a hearing, the court entered findings (in addition to those quoted above) to the general effect that the Riverfront Park security officers are not police officers and had no authority to use force or to effect arrests. Based on these findings, the court concluded the security officers were not agents of the state but rather "had the status of private citizens." CP at 32. The court thus denied the motions to suppress. Ms. Heritage then was convicted on stipulated facts.

■ On appeal, Ms. Heritage objects primarily to the juvenile court's conclusion that the park security officers were not agents or instrumentalities of the state. *See generally State v. Swenson*, 104 Wn. App. 744, 753-54, 9 P.3d 933 (2000); *State v. Clark*, 48 Wn. App. 850, 855-56, 743 P.2d 822, *review denied*, 109 Wn.2d 1015 (1987).

As a general proposition, neither state nor federal constitutional protections against unreasonable search and seizure are implicated in the absence of state action. *See Burdeau v. McDowell*, 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A.L.R. 1159 (1921); *State v. Ludvik*, 40 Wn. App. 257, 262, 698 P.2d 1064 (1985); 1 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 1.8 (3d ed. 1996). While state action is required, action by law enforcement is not necessary to invoke the protections of article I, section 7. *State v. Vonhof*, 51 Wn. App. 33, 37, 751 P.2d 1221 (1988) (action by tax appraiser implicates article I, section 7)[, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989)]; *see also* [*City of Seattle v.*] *McCready*, 123 Wn.2d 260[, 868 P.2d 134 (1994)] (article I, section 7 applies to city building inspectors' authority to perform nonconsensual inspections.); *Kuehn v. Renton Sch. Dist. No. 403*, 103 Wn.2d 594, 602, 694 P.2d 1078 (1985) (school officials and parents were state actors for purposes of Fourth Amendment and article I, section 7 when conducting general search of students' luggage).

*In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 337, 945 P.2d 196 (1997); *see Camara v. Mun. Court*, 387 U.S. 523, 530-32, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967) (warrant required for administrative inspections). If the governmental employee is acting within his or her official capacity,

those actions invoke constitutional protections. *Maxfield*, 133 Wn.2d at 337.

■ There is no question here that the park security guards, who were employees of the city of Spokane, were acting within their official capacity. The juvenile court erred by concluding the security officers "had the status of private citizens." CP at 32.

■ The remaining question is whether Ms. Heritage's statement during questioning by the security officers should be suppressed because she was not warned that any statement could be used against her. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *Miranda* warnings are designed to protect a defendant's right not to make incriminating statements while in the potentially coercive environment of custodial police interrogation. *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987). The *Miranda* rule applies when "the interview or examination is (1) custodial (2) interrogation (3) by a state agent." *State v. Post*, 118 Wn.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992) (citing *State v. Sargent*, 111 Wn.2d 641, 649-53, 762 P.2d 1127 (1988)). Unless a defendant has been given the *Miranda* warnings, his statements during custodial interrogation are presumed to be involuntary. *Sargent*, 111 Wn.2d at 647-48.

On reconsideration, the State contends that *Miranda* warnings are required only when the interrogation is by law enforcement officers. It relies on *State v. Wolfer*, 39 Wn. App. 287, 693 P.2d 154 (1984), *review denied*, 103 Wn.2d 1028 (1985), which also involved interrogation by a school security guard. In *Wolfer*, the court held *Miranda* warnings were not required because the security guard was not " 'employed by an agency of government, federal, state or local, *whose primary mission is to enforce the law.*' " *Id*. at 294 (quoting *People v. Wright*, 249 Cal. App. 2d 692, 694-95, 57 Cal. Rptr. 781, 782 (1967)).

■ We reject *Wolfer's* attempt to limit the scope of *Miranda*. Professors LaFave, et al., explain:

The notion that *Miranda* does not inevitably apply whenever questions are asked in a custodial setting by a government employee is an appealing one, for not all such interrogations would seem to have a coercive impact comparable to the police questioning which concerned the Court in *Miranda*. This is not to say, however, that the decisions referred to above [including *Wolfer*] are beyond dispute, for the Supreme Court in *Mathis v. United States*[, 391 U.S. 1, 88 S. Ct. 1503, 20 L. Ed. 2d 381 (1968)], seems to have rejected the notion that *Miranda* applies only to criminal law enforcers. *Mathis* is a case which is not clouded by uncertainties about custody, for the interrogation at issue occurred while the defendant was serving a jail sentence on an unrelated matter. The questioning was by an IRS agent and—more importantly for present purposes—one who was a "civil investigator * * * required, whenever and as soon as he finds 'definite indications of fraud or criminal potential,' to refer a case to the Intelligence Division for investigation by a different agent who works regularly on criminal matters." Such a referral occurred eight days *after* the questioning in issue, and there was no suggestion that it was improperly delayed, but yet the Court held that *Miranda* applied. The *Mathis* majority acknowledged that "tax investigations differ from investigations of murder, robbery, and other crimes" because they "may be initiated for the purpose of a civil action rather than criminal prosecution," but then concluded this was not a controlling difference because, "as the investigating revenue agent was compelled to admit, there was always the possibility during his investigation that his work would end up in a criminal prosecution." Additional proof that the Court does not view *Miranda* as limited to interrogation by police officers is provided by *Estelle v. Smith*[, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981)], holding *Miranda* applicable to a psychiatric examination. The Court declared: "That respondent was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney is immaterial."

2 WAYNE R. LaFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 6.10(c), at 622-23 (2d ed. 1999) (footnotes omitted). The authors conclude that *Mathis* and *Estelle* "support the conclusion that questioning by any

government employee comes within *Miranda* whenever 'prosecution of the defendant being questioned is among the purposes, definite or contingent, for which the information is elicited,' [*United States v. D.F.*, 63 F.3d 671, 683 (7th Cir. 1995), *aff'd on remand*, 115 F.3d 413 (7th Cir. 1997)] as will often be manifested by the fact the questioner's duties include the investigation or reporting of crimes." 2 LaFave, *supra*, at 624.

Here, arrest and prosecution of the juveniles was at least a contingent purpose of the questioning, and one of the duties of the security guards was the investigation of criminal activities in the park. We therefore conclude the security guards' actions invoked the *Miranda* rule. We therefore deny the State's motion for reconsideration.

■■ For *Miranda* purposes, an officer's questions are interrogation if they are " 'reasonably likely to elicit an incriminating response.' " *State v. Breedlove*, 79 Wn. App. 101, 112, 900 P.2d 586 (1995) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)); *see State v. Birnel*, 89 Wn. App. 459, 467, 949 P.2d 433 (1998), *review denied*, 138 Wn.2d 1008 (1999). An officer's question about the ownership of obviously illicit paraphernalia is reasonably likely to elicit an incriminating response. The question satisfies *Miranda*'s interrogation requirement.

■ *Miranda*'s custody requirement is satisfied "as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)). Whether a defendant was in custody for *Miranda* purposes depends on "whether the suspect reasonably supposed his freedom of action was curtailed." *State v. Short*, 113 Wn.2d 35, 41, 775 P.2d 458 (1989) (citing *State v. Watkins*, 53 Wn. App. 264, 274, 766 P.2d 484 (1989)); *see Berkemer*, 468 U.S. at 442 ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). It thus is

irrelevant whether the police had probable cause to arrest the defendant, *Harris*, 106 Wn.2d at 789-90 (citing *Berkemer*, 468 U.S. at 442); whether the defendant was a "focus" of the police investigation, *Beckwith v. United States*, 425 U.S. 341, 347, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976); whether the officer subjectively believed the suspect was or was not in custody, *Berkemer*, 468 U.S. at 442; or even whether the defendant was or was not psychologically intimidated, *Sargent*, 111 Wn.2d at 649.

Here, the juvenile court's conclusion that the officers were not state actors made it unnecessary to clearly address whether Ms. Heritage was in custody for *Miranda* purposes. Nevertheless, the court "found" that there were "no indicia of any detention whatsoever." CP at 30. We are not bound by this "finding." Whether evidentiary facts in a suppression hearing satisfy a legal standard is an issue of law and is subject to de novo review. *See State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996).

There is evidence to support a conclusion that a reasonable person—particularly a juvenile—in Ms. Heritage's situation would believe her freedom was significantly restrained under the circumstances. The officers were wearing bullet-proof vests under T-shirts bearing gold badges with the words "Security Officer" on them. Although they did not carry firearms, each officer also wore a duty belt containing pepper spray, a collapsible baton, handcuffs, a radio, and a flashlight holder. Although the officers said they did not "arrest" anyone, one testified:

> I don't recall saying "You're not free to leave." I recall asking them, you know, "Whose pipe is this," "Whose marijuana is this," "I need to see identification," "I'm just going to get your names and we'll get you on your way."

Report of Proceedings (RP) at 30.

The four individuals clearly viewed themselves to be restrained from leaving. One said: "Come on, just let us leave, man; just let us leave, come on." RP at 31.

The issue is not whether Ms. Heritage was *actually* under arrest, but whether a reasonable person in her situation would have believed her freedom of action had been curtailed to a degree associated with formal arrest. A reasonable person would believe her freedom was significantly curtailed when confronted by two officers bearing most of the accoutrements of police officers and who clearly were attempting to investigate a crime committed in their presence. Although the court found the security officers did not expressly instruct the individuals to stay and none of them was touched or searched, its conclusion that the individuals were not detained during this period is not supported by the evidence. Under these coercive circumstances, a reasonable person would believe his or her freedom of action had been curtailed to a degree similar to a formal arrest. Ms. Heritage thus was in custody for *Miranda* purposes.

Relying on an implied consent case, the State identifies several "factors" for determining whether a person is in custody: whether the person is physically apprehended, restrained, handcuffed, placed in a police vehicle, or driven to the police station, whether the officers drew their weapons, and whether the person was allowed to consult others before or during questioning. *State v. Rivard*, 131 Wn.2d 63, 76, 929 P.2d 413 (1997). In *Rivard*, however, the defendant already had been advised of his *Miranda* rights before the police questioning. *Id.* The case's holding thus has no bearing on what constitutes custody for *Miranda* purposes. The *Rivard* court's discussion is limited to the narrow issue presented: whether the defendant was *under arrest* for purposes of the implied consent statute, RCW 46.20.308. *Id.* at 70-71; *see State v. Wetherell*, 82 Wn.2d 865, 869, 514 P.2d 1069 (1973) (lawful arrest is necessary prerequisite for implied consent).

The State also contends the encounter was the equivalent of a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A routine investigative stop supported by reasonable suspicion does not require *Miranda* warnings. *State v. Phu V. Huynh*, 49 Wn. App. 192,

201, 742 P.2d 160 (1987), *review denied*, 109 Wn.2d 1024 (1988). Even the fact that a suspect is not "free to leave" during the course of a *Terry* or investigative stop does not make the encounter comparable to a formal arrest for *Miranda* purposes. *State v. Walton*, 67 Wn. App. 127, 130, 834 P.2d 624 (1992). This is because an investigative encounter, unlike a formal arrest, is not inherently coercive since the detention is presumptively temporary and brief, relatively less "police dominated," and does not lend itself to deceptive interrogation tactics. *Id.* To qualify as a *Terry* stop, the detention must be " ' "reasonably related in scope to the justification for [its] initiation." ' " *Berkemer*, 468 U.S. at 439 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975) (quoting *Terry*, 392 U.S. at 29)).

■ The facts here indicate the security officers' detention of Ms. Heritage and her companions was not a limited *Terry* stop. The officers recognized the odor of marijuana as soon as they encountered the group and undertook immediately to determine who was responsible, deceptively assuring them that no one was going to be arrested. The security officers then decided to call in Spokane police with the obvious expectation that one or more of the individuals would be arrested. This was not a limited *Terry* stop.

It is undisputed that Ms. Heritage was not advised of her *Miranda* rights before she made the incriminating statement. The statement thus was inadmissible and should have been suppressed. The conviction is reversed, and the case is remanded for retrial or dismissal.

BROWN, C.J., and SCHULTHEIS, J., concur.

Review granted at 149 Wn.2d 1026 (2003).