

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34960-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACOB NOEL BUCHE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Jacob Buche appeals his convictions following a bench trial for second degree burglary and bail jumping. He assigns error to the trial court's failure to enter written findings of fact and conclusions of law and, for the first time on appeal, objects to a police officer's testimony that he refused to consent to a warrantless search. He contends, alternatively, that his trial lawyer provided ineffective assistance of counsel by failing to object to the evidence.

We find no error other than the trial court's failure to comply with the important requirement of CrR 6.1(d) that it enter findings and conclusions following a bench trial. Delayed entry of findings and conclusions is bad practice because it can create doubt whether the trial court accurately recalls the evidence and its reasons for a decision. *See State v. Garcia*, 146 Wn. App. 821, 826, 193 P.3d 181 (2008) (citing *State v. Cannon*,

130 Wn.2d 313, 329, 922 P.2d 1293 (1996)). When a failure to enter findings and conclusions is raised by a defendant's brief on appeal, the State should cause the required findings and conclusions to be entered promptly, to avoid even further delay. To reinforce the importance of the rule, we will ordinarily remand for compliance without evaluating whether the error was harmless.

We will make an exception in this case but with a reminder to the court and prosecutor to comply in the future. The error is harmless. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In early January 2016, Moses Lake Police Officer Adam Munro was responding to the report of a burglary of a residential garage when he noticed a white Jeep with silver and gold rims that matched the description of a Jeep a neighbor had seen around the time of the burglary. The burgled garage was located in a cul-de-sac, which is where the neighbor had seen the Jeep. He had not seen the Jeep in the neighborhood before, and described it as unique and as looking "out of place." Report of Proceedings (RP) at 51. The neighbor had described the Jeep's occupants—a man and a woman—as oddly attired, mostly in black and with their faces largely obscured by scarves and hats.

When Officer Munro spotted the Jeep, it was parked on the side of the road. Its occupants—Jason Buche and a female passenger—matched the description of the persons the victims' neighbor had seen in the suspicious Jeep.

2

The officer approached the Jeep and spoke with Mr. Buche, explaining why he stopped. Mr. Buche denied involvement and told the officer he was stopped because the Jeep had broken down. With the Jeep inoperative, Officer Munro contacted James Nelson, co-owner of the burgled garage, and had him drive the neighbor-witness by the Jeep, to see if he could identify it. The neighbor-witness told Officer Munro he was 90 percent sure the Jeep and female passenger were the ones he saw in the cul-de-sac and was "pretty sure" (the neighbor-witness placed it at about 50 percent sure) that it was Mr. Buche he had seen. RP at 139. Based on that and items in plain sight within the Jeep that matched items stolen from the garage, Officer Munro impounded the Jeep, applied for a search warrant, and arrested Mr. Buche.

It was Mr. Nelson's wife, Sumer, who had first noticed signs that the family garage had been burglarized. She had returned home after about an hour's absence and noticed that the family dog was upset, the garage door was open, items were missing from the garage, and there were footprints inside the garage and in the snow outside that had not been there when she left. Officers photographed the footprints that could still be seen in the snow and later presented testimony that the tread pattern on the shoes Mr. Buche was wearing, unlike the shoes of his female passenger, was consistent with the footprints in the snow. And an officer who had transported Mr. Buche and his female passenger to the Grant County jail reported that during the drive Mr. Buche asked his

3

companion if she had said anything he should know about, she answered no, and he then told her he was sorry and it was not her fault.

Mr. Buche was charged with burglary in the second degree. He failed to appear at an omnibus hearing that was scheduled for July 11, 2016, and the information was amended to add a charge of bail jumping.

The charges against Mr. Buche were tried to the court. During the State's direct examination of Officer Munro, it elicited the following testimony about the officer's search of the vehicle:

> [Prosecutor]: Did you—ask him if you could search the vehicle?
> [Officer Munro]: I did.
> [Prosecutor]: Okay. What did he do in response to that?
> [Officer Munro]: He initially opened the rear driver's side door of the vehicle.
> [Prosecutor]: Okay.
> [Officer Munro]: Then indicated no, that I could not search the vehicle.
> [Prosecutor]: Okay. Did you see anything of interest when he opened the door[?]
> [Officer Munro]: I saw some just mechanic's tools in the vehicle.

RP at 137-38. Mr. Buche's attorney did not object.

In closing, Mr. Buche's lawyer argued that the State's case was entirely circumstantial and weak. The State argued that while no one saw Mr. Buche actually enter the victims' garage, the circumstantial evidence against him was strong.

At the conclusion of the closing arguments, the trial court took a 15 minute break and then announced its oral decision, explaining why it viewed the evidence as sufficient.

4

The court made no reference to the fact that Mr. Buche had revoked his consent for Officer Munro to search the Jeep. It found Mr. Buche guilty of both charges.

Mr. Buche was sentenced to 59½ months for the burglary and 38 months for the bail jumping, to run concurrently. No written findings of fact or conclusions of law were entered. Mr. Buche appeals.

ANALYSIS

Mr. Buche contends the judgment and sentence must be vacated and remanded because the trial court failed to enter written findings of fact and conclusions of law as required by CrR 6.1(d). He also contends that the evidence of his withholding of consent to a search of the Jeep violated his federal and state constitutional rights and, alternatively, that he received ineffective assistance of counsel when his trial lawyer failed to object.

1. FAILURE TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW

CrR 6.1(d) provides that "[i]n a case tried without a jury, the court shall enter findings of fact and conclusions of law." The findings and conclusions are important because they "enable an appellate court to review the questions raised on appeal." *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998). Because an oral decision "'has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment,'" the remedy for a violation of the rule is to remand for entry of findings and

conclusions. *See id.* (quoting *State v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966)).

A failure to comply with the requirements of CrR 6.1(d) is subject to harmless error analysis, however, even though we usually remand for compliance. *State v. Banks*, 149 Wn.2d 38, 43-44, 65 P.3d 1198 (2003). "'An error is not harmless beyond a reasonable doubt where there is a reasonable probability that the outcome of the trial would have been different had the error not occurred . . . . A reasonable probability exists when confidence in the outcome of the trial is undermined.'" *Id.* at 44 (quoting *State v. Powell*, 126 Wn.2d 244, 267, 893 P.2d 615 (1995)). In *Banks*, findings following a bench trial failed to address whether the defendant had "knowingly" possessed a firearm, a necessary element of unlawfully possessing it. Because it was clear on review of the record that "the trial court took [the defendant]'s knowledge into account," the court explained there was "no reasonable probability that the outcome would differ if . . . the court had entered an express finding on knowledge." *Id.* at 46. Because the error was harmless, the court affirmed the conviction and did not remand. *Id.* at 47.

In the analogous context of decisions on motions to suppress, CrR 3.5(c) and 3.6(b) require entry of written findings of fact and conclusions of law, yet Washington decisions hold that error under those rules "'is harmless where the trial court's oral findings are sufficient to permit appellate review.'" *State v. Riley*, 69 Wn. App. 349, 353, 848 P.2d 1288 (1993) (quoting *State v. Smith*, 67 Wn. App. 81, 87, 834 P.2d 26

6

(1992), *rev'd in part on other grounds*, 123 Wn.2d 51, 864 P.2d 1371 (1993), *overruled*

*by State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), *abrogated in part on other*

*grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466

(2006)).

Washington Pattern Instruction: Criminal § 60.04 correctly identifies the elements

of burglary in the second degree as being that (1) a defendant entered or remained

unlawfully in a building, other than a dwelling, (2) with intent to commit a crime against

a person or property therein, and (3) this act occurred in Washington. 11A WASHINGTON

PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 60.04 (4th ed.

2016); RCW 9A.52.030. It was undisputed by Mr. Buche that the crime took place in the

state of Washington and that items stolen from the victims' garage were found in the Jeep

he was driving on the day the burglary was reported. In closing, defense counsel stated

that stolen tools "end up in the back of [Mr. Buche's] truck, or whoever's truck that is.

And that raises a good question—maybe this is possession of stolen property, if he has

knowledge that it's stolen." RP at 212-13. What Mr. Buche disputed is that he was ever

in the Nelson's garage.

The facts on which the trial court relied for its inference that Mr. Buche had

entered the garage were identified in its oral decision. They include the fact that Ms.

Nelson came home after a short absence to find her garage door open, items missing from

her garage, unexplained footprints, and a distressed dog; that a neighbor from across the

7

street had noticed a unique and unfamiliar Jeep leaving the cul-de-sac shortly before; that items stolen from the garage were found in a Jeep meeting the neighbor's description that had broken down nearby; that the neighbor was quite certain in his identification of the Jeep and its female passenger, although somewhat less confident in his identification of Mr. Buche; that shoe prints outside the burgled garage exhibited a tread similar to that on the soles of the shoes being worn by Mr. Buche but unlike the soles of the shoes of his female passenger; and that Mr. Buche told his female passenger en route to the county jail that he was sorry and it was not her fault. As to the bail jumping charge, the trial court announced that it based its finding of guilt on the exhibits and recordings of court proceedings and the testimony of the court clerk.

Here, as in *Banks*, it was clear what evidence the trial court took into account in finding that the State had proved the elements of the crimes charged. There is no reasonable probability that the outcome would have been different if the court had complied with the requirement to enter written findings.

2. EVIDENCE THAT MR. BUCHE REFUSED TO CONSENT TO WARRANTLESS SEARCH

Officer Munro provided brief testimony about Mr. Buche's revocation of his consent to a search that Mr. Buche now finds objectionable, but that he did not object to at trial. We first consider whether to review this unpreserved error. Ordinarily, we will not. *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011), *aff'd and remanded*, 174 Wn.2d 707, 285 P.3d 21 (2012) (citing RAP 2.5(a) and *State v. Scott*, 110

Wn.2d 682, 685, 757 P.2d 492 (1988)).  Mr. Buche argues persuasively that using refusal

to consent to a search as substantive evidence of guilt is unconstitutional, but he does not

contend that Officer Munro's testimony was "manifest [constitutional] error," which it

must be to qualify for consideration for the first time on appeal.  RAP 2.5(a)(3); *State v.*

*O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).  Instead, Mr. Buche argues that if the

error was unpreserved, then his trial lawyer's failure to object deprived Mr. Buche of his

constitutional right to effective assistance of counsel, a claim that may be made for the

first time on appeal.  Br. of Appellant at 10 (citing *State v. Nichols*, 161 Wn.2d 1, 9, 162

P.3d 1122 (2007)).

Effective assistance of counsel is guaranteed by both the Sixth Amendment to the

United States Constitution and article I, section 22 of the Washington Constitution.

*Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995).  To demonstrate

ineffective assistance of counsel, a defendant must show two things: "(1) defense

counsel's representation was deficient, *i.e.*, it fell below an objective standard of

reasonableness based on consideration of all the circumstances; and (2) defense counsel's

deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability

that, except for counsel's unprofessional errors, the result of the proceeding would have

been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

When a claim can be disposed of on one ground, this court need not consider both

prongs. *Strickland*, 466 U.S. at 697. A claim for ineffective assistance of counsel presents a mixed question of law and fact, which this court reviews de novo. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006).

As the State points out, Officer Munro testified that Mr. Buche first responded to his request to search the Jeep by opening the rear driver's side door, and the officer saw mechanic's tools inside the vehicle. Because tools were among the items reported missing from the victims' garage, this was relevant, admissible evidence. Yet the remaining evidence of stolen items found in the Jeep was obtained through execution of a search warrant. Officer Munro's testimony that Mr. Buche revoked his consent explained this discrepancy in when and how the stolen property was discovered.

This was a bench trial. We presume in a bench trial that the court relies only on admissible evidence in reaching a decision. *State v. Wolfer*, 39 Wn. App. 287, 292, 693 P.2d 154 (1984), *abrogated in part on other grounds by State v. Heritage*, 152 Wn.2d 210, 95 P.3d 345 (2004). A defense lawyer can reasonably presume that as well. Mr. Buche's lawyer knew that if the State later argued that the court should draw a negative inference from his client's revocation of consent, he could object. Unsurprisingly, the State never made that improper argument. Unsurprisingly, the trial court did not treat the revocation of consent as relevant. Mr. Buche's lawyer merely withheld objection to testimony he knew explained otherwise incongruent evidence. He reasonably believed it

10

No. 34960-8-III
*State v. Buche*

would not be relied on by the court for an improper purpose, and it was not. That was not

deficient representation.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

11