197 P.3d 1190 (2008)
STATE of Washington, Respondent,
v.
S.A.W., Appellant.
No. 36336-4-II.
Court of Appeals of Washington, Division 2.
November 18, 2008.
Publication Ordered December 23, 2008.
*1191 Nancy P. Collins, Susan F. Wilk, Washington Appellate Project, Seattle, WA, for Appellant.
Edward P. Lombardo, Mason County Prosecuting Attorney, Shelton, WA, for Respondent.
VAN DEREN, C.J.
¶ 1 SW, a juvenile, appeals his adjudications for count I, first degree trafficking in stolen property,[1] count II, first degree possession of stolen property,[2] and count III, second degree taking a motor vehicle without permission.[3] He argues that the juvenile court erred in failing to hold a CrR 3.5 hearing and that he received ineffective assistance of counsel. Because the juvenile court failed to conduct an independent assessment of the credibility and voluntariness and, thus, the admissibility of SW's post-arrest oral incriminating statement, we reverse his adjudications and remand.

FACTS
¶ 2 On December 16, 2006, Shane Northup received an anonymous telephone call. The caller told Northup that his Honda CRF 450 motorcycle was in front of a residence in Mason County, Washington. Until the call, Northup did not realize his motorcycle was missing from his garage. He drove to the address, found the motorcycle, and loaded it into his truck. He then went to the residence and knocked on the door to find out who had stolen the motorcycle. Terry Brown answered the door. Brown told Northup that he received the motorcycle from SW; Northup called the police.
¶ 3 Brown testified that that he met SW through a friend and co-worker, Alex Cava. Brown told Cava that he wanted to buy a dirt *1192 bike. Cava connected Brown to SW and Brown arranged to trade SW a pickup truck in exchange for the motorcycle. He stated that Cava and SW delivered the motorcycle to his house the day before Northup discovered it was missing from his garage.
¶ 4 The first officer to contact SW, Mason County Deputy Sheriff Thurman Rankin, spoke briefly with him. SW denied involvement in the offense. SW provided Rankin with a written statement denying any involvement. A second officer, Mason County Deputy Sheriff William Philpott, also spoke with SW and, after further investigation, returned to SW's residence and placed him under arrest.
¶ 5 While arresting SW, Philpott read him his Miranda rights and "his additional warning to juvenile."[4] Report of Proceedings (RP) at 29. SW did not ask for an attorney and Philpott testified that SW "[d]id not express any confusion about" the rights. RP at 30. After the arrest, SW changed his previous statement. He told Philpott that he learned from Cava that Brown had stolen a motorcycle. Cava had the motorcycle in his possession and SW rode the motorcycle up and down his street with Cava's permission.
¶ 6 On March 6, 2007, the State charged SW with (1) trafficking in stolen property, (2) possessing stolen property and (3) taking a motor vehicle without permission. The Mason County superior court held a juvenile bench trial. On cross-examination, Philpott testified that he asked SW "more than once" whether he had taken the motorcycle.[5] RP at 39. He also testified that he told SW that he believed he was not telling the truth and that he had not not contacted SW's mother.
¶ 7 During closing argument, SW's attorney attempted to cast doubt on the truth of SW's post-arrest incriminatory oral statement. She contended that he had previously denied involvement "over and over" and added: "[H]e could have just been trying to please the officers so they would stop asking him over and over if he had done it." RP at 109. She concluded: "[T]his was a coercive statement and I would ask the Court weigh that in considering the proof." RP at 110. The court interrupted and observed that there had been no request for a CrR 3.5 hearing.[6] It stated that it considered the issue of whether SW's statement was credible or voluntary "behind us" and ruled that the "issue [was] no longer before [the court]." The court continued that "[defense counsel] was attacking the credibility or the voluntariness of her client's statement ... and I was simply saying that that issue is no longer before me." RP at 110. But earlier it had allowed defense counsel's questioning of Philpott about the circumstances surrounding taking SW's statement. Defense counsel repeated her request that: "The Court weigh [SW's] statement based on the evidence that we've received during this hearing." RP at 110.
¶ 8 The juvenile court adjudicated SW not guilty of count I, first degree trafficking in stolen property. It found him guilty of count II, first degree possession of stolen property, and count III, second degree taking a motor vehicle without permission. With respect to the count III adjudication, the juvenile court stated: "[P]roof of [taking a motor vehicle without permission] was in [SW's] statement to Deputy Philpott. And again, in my opinion, there is no question as to the voluntariness or the admissibility of his statement. There was no objection to that admission. [SW] had been completely advised of his ... rights at that time by Deputy Philpott." RP *1193 at 120. The juvenile court later entered findings of fact and conclusions of law supporting the adjudication and, for sentencing purposes, merged the count III adjudication and the count II adjudication.
¶ 9 SW appeals.

ANALYSIS
¶ 10 SW argues that the juvenile court erred in failing to hold a CrR 3.5 hearing to evaluate the admissibility of his statement to Philpott. CrR 3.5 provides a uniform procedure governing confessions in a manner "that will prevent the jury from hearing an involuntary confession. The rule's significant impact is that the trial judge resolves the issue of voluntariness in the absence of the jury and, thus, obviates due process problems that would arise where the jury hears an involuntary confession." State v. Myers, 86 Wash.2d 419, 425, 545 P.2d 538 (1976); see also State v. Williams, 137 Wash.2d 746, 751, 975 P.2d 963 (1999).

I. Standard of Review
¶ 11 SW neither requested a pretrial CrR 3.5 hearing nor objected to the juvenile court's failure to hold such a hearing during trial. Generally, we do not consider issues raised for the first time on appeal. RAP 2.5(a). SW argues that this error is manifest and "affect[s] a constitutional right," thus, entitling him to raise it for the first time on appeal. RAP 2.5(a)(3). We review issues of law de novo. See generally State v. Solomon, 114 Wash.App. 781, 789, 60 P.3d 1215 (2002).
¶ 12 SW is correct that, where a manifest error "affect[s] a constitutional right," it may be raised for the first time on appeal. But the defendant has the burden of making the required showing of prejudice to the court. This requirement involves the identification of the constitutional error and how the error, in the context of the trial, affected the defendant's rights. It is the showing of actual prejudice that makes the error "manifest" and allows for appellate review. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995) (citing State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988)).
¶ 13 The State primarily relies on Williams to argue that SW cannot appeal the juvenile court's failure to hold a CrR 3.5 hearing because our Supreme Court has held that a trial court's failure to advise a defendant of his right under CrR 3.5(b) to testify at a CrR 3.5 hearing did not require reversal when the defendant raised the error for the first time on appeal. 137 Wash.2d at 751-54, 975 P.2d 963. Williams is distinguishable, Williams did not challenge an incriminating statement but disputed a minor fact going to "credibility and weight, not legal admissibility" and he did not question the voluntariness of his statement. 137 Wash.2d at 755, 975 P.2d 963 (quoting State v. Williams, 91 Wash.App. 344, 352, 955 P.2d 865 (1998)). Furthermore, the trial court actually held a CrR 3.5 hearing but did not inform Williams that he had a right to testify at the hearing without being compelled to testify about the statement at trial; subsequently, Williams testified at trial about the statement. See Williams, 137 Wash.2d at 752, 975 P.2d 963 (distinguishing State v. Alexander, 55 Wash. App. 102, 105, 776 P.2d 984 (1989) on factual grounds). But because the trial court fully assessed the circumstances surrounding the admission of Williams' non-incriminating statement, the Supreme Court held that the trial court's failure to advise him of his right to testify under CrR 3.5(b) was not a constitutional error that resulted in actual prejudice. As a result, Williams could not raise his CrR 3.5 issue for the first time on appeal. Williams, 137 Wash.2d at 755-56, 975 P.2d 963; see also State v. Kidd, 36 Wash.App. 503, 509, 674 P.2d 674 (1983).
¶ 14 Here, SW did seek to challenge the voluntariness of his incriminating statement. Not only did the juvenile court fail to hold a CrR 3.5 hearing, SW also did not testify at trial about the circumstances surrounding his statement. Moreover, the juvenile court did not inform SW that he could testify about his incriminating statement in a CrR 3.5 hearing without having to testify at trial. CrR 3.5(b). The record also shows that the juvenile court dismissed defense counsel's arguments about the statement's voluntariness, treating the issue as waived. The juvenile court later found SW's statement admissible *1194 based solely on Philpott's trial testimony. See Alexander, 55 Wash.App. at 105, 776 P.2d 984 (criticizing "the [trial] court [for making] its decision to admit this statement based only on the officer's version of the facts").
¶ 15 The record before us demonstrates that the juvenile court did not allow SW to challenge the State's use of SW's incriminating statement to Philpott and prevented SW from arguing this issue at trial. Because the juvenile court based its adjudication on SW's statement, SW raises an issue that may be addressed for the first time on appeal because defendants have a constitutional right to "have the voluntariness of an incriminating statement assessed prior to its admission." Williams, 137 Wash.2d at 754, 975 P.2d 963.

II. CrR 3.5 Hearings in Juvenile Court
¶ 16 SW was convicted in a juvenile court bench trial without a separate hearing under CrR 3.5 to determine the admissibility of his statement to Philpott. "[M]ost courts have held that there is no need for a separate voluntariness hearing in the case of a bench trial, reasoning that a judge is presumed to rely only upon admissible evidence in reaching a decision." State v. Wolfer, 39 Wash. App. 287, 292, 693 P.2d 154 (1984), abrogated on other grounds by State v. Heritage, 152 Wash.2d 210, 95 P.3d 345 (2004).
¶ 17 In Wolfer, Division One of this court affirmed the admission of a confession when the trial court did not hold a CrR 3.5 hearing, but where both the juvenile defendant and the officer testified at trial in detail about the circumstances surrounding the juvenile's incriminating statements. 39 Wash. App. at 291, 693 P.2d 154. This was in accord with In re the Welfare of Noble, where the trial court engaged in fact-finding regarding voluntariness of the juvenile's statement and conducted a detailed analysis of the circumstances surrounding the confession, then admitted the statement only for impeachment purposes. 15 Wash.App. 51, 54-55, 58, 547 P.2d 880 (1976).
¶ 18 In State v. Tim S., the trial court admitted a juvenile's statement without Miranda warnings, allegedly only for impeachment purposes. 41 Wash.App. 60, 62, 701 P.2d 1120 (1985). Division Three of this court held that the trial court actually treated the statement as substantive evidence of guilt even though it was "not clear from the record if the juvenile court considered whether Tim's statement had been voluntarily given." Tim S., 41 Wash.App. at 64, 701 P.2d 1120. Under these circumstances, Division Three distinguished Noble and held that a separate CrR 3.5 hearing was required in a juvenile matter. Tim S., 41 Wash.App. at 63-64, 701 P.2d 1120.
¶ 19 In Alexander, "the [trial] court made its decision to admit [the juvenile's] statement based only on the officer's version of the facts, without permitting the defendant the opportunity to testify or present other evidence, if any." 55 Wash.App. at 105, 776 P.2d 984. It also admitted the juvenile's statement based on the juvenile signing a form acknowledgement that an officer advised him of his Miranda rights without a signed form waiving those rights. We held that no separate pretrial CrR 3.5 hearing is required in a juvenile proceeding, but concluded that the trial court erred by failing to advise defendant of his rights under CrR 3.5(b). Alexander, 55 Wash.App. at 103-04, 776 P.2d 984.
¶ 20 Recently, Division Three of this court affirmed the admission of a statement in the absence of a CrR 3.5 hearing where officers advised the juvenile of her Miranda rights; the prosecutor described the interrogation procedure to the trial court; and, importantly, the juvenile did not dispute the voluntariness of her statement. State v. G.M.V., 135 Wash.App. 366, 373, 144 P.3d 358 (2006), review denied, State v. Vargas, 160 Wash.2d 1024, 163 P.3d 794 (2007). These cases demonstrate that, although a separate CrR 3.5 hearing is not necessary in juvenile proceedings, the circumstances surrounding a juvenile's statement must be fully assessed before the admission of an alleged inculpatory statement, either in a formal pretrial hearing or during trial.
¶ 21 Here, despite SW's counsel attempts to argue voluntariness and substantive admissibility of SW's statements to Philpott, the juvenile court ruled that, because SW did *1195 not formally request a separate CrR 3.5 hearing, the issues of credibility and voluntariness of his incriminating statement were not before it at trial. The juvenile court reiterated its conclusion when it discussed its findings of fact and conclusions of law, stating: "[T]here is no question as to the voluntariness or admissibility of the statement.... [SW] had been completely advised of his ... rights at that time by Deputy Philpott." It emphasized that "[t]here was no objection" to the admitted incriminating statement. RP at 120. Thus, the juvenile court did not conduct an independent assessment of the statement's voluntariness and credibility.
¶ 22 Furthermore, CrR 3.5(d)(4) provides:
If the court rules that the statement is admissible, and it is offered in evidence: (1) the defense may offer evidence or cross-examine the witnesses, with respect to the statement without waiving an objection to the admissibility of the statement;... (4) if the defense raises the issue of voluntariness under subsection (1) above, the jury shall be instructed that they may give such weight and credibility to the confession in view of the surrounding circumstances, as they see fit.
Here, the juvenile court stands in the place of the jury. A defendant does not waive a challenge to the voluntariness or credibility and, thus, the admissibility of his statement by not requesting a formal CrR 3.5 hearing.
¶ 23 The juvenile court deprived SW of an express defense to the admission of the statement, namely, that it was not a voluntary when it did not allow argument on the issues of the voluntariness and credibility of SW's statement to Philpott. A juvenile court may incorporate a CrR 3.5 inquiry into the trial, but the trial court is not free to ignore the substance of the rights such a hearing protects. Williams, 137 Wash.2d at 754, 975 P.2d 963 (quoting Williams, 91 Wash.App. at 351, 955 P.2d 865) (contrasting the "form" of a CrR 3.5 hearing with the "substance" of the rights such a hearing is supposed to protect). A juvenile court must examine the voluntariness and credibility of a juvenile's statements, particularly when the juvenile takes issue with the voluntariness or credibility of those statements. CrR 3.5(d)(4).
¶ 24 The juvenile court erred by conducting only a cursory one-sided analysis of the statement's admissibility on the erroneous assumption that SW waived his ability to challenge the voluntariness of the incriminating statement and, in turn, its reliability and admissibility. We hold that the juvenile court erred in relying on SW's incriminating statement to adjudicate him guilty of possession of stolen property and taking a motor vehicle without permission without first having fully inquired whether his statement was voluntary and credible and, therefore, admissible.
¶ 25 We reverse SW's adjudications for possession of stolen property and taking a vehicle without permission and remand for further proceedings, including retrial if the State so elects.[7]
We concur: HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] "A person who knowingly initiates, organizes, plans ... the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." RCW 9A.82.050(1).
[2] "A person is guilty of possessing stolen property in the first degree if he or she possesses stolen property, other than a firearm as defined in RCW 9.41.010 or a motor vehicle, which exceeds one thousand five hundred dollars in value." RCW 9A.56.150(1).
[3] "A person is guilty of taking a motor vehicle without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away any automobile or motor vehicle. . . that is the property of another, or he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken." RCW 9A.56.075(1).
[4] The juvenile warning read by Deputy Philpott to SW was: "If you are under the age of eighteen, anything you say can be used against you in a juvenile court prosecution for a juvenile offense, and can also be used against you in an adult court criminal prosecution if you are to be tried as an adult." Report of Proceedings (RP) at 29-30.
[5] The State objected to this line of questioning on the basis of relevance. The juvenile court overruled the objection because the questions were "relevant to the voluntariness of [SW's] statement." RP at 39.
[6] "When a statement of the accused is to be offered in evidence," the judge shall hold a hearing, "for the purpose of determining whether the statement is admissible." CrR 3.5(a). CrR3.5 applies to juvenile proceedings under JuCR 1.4(b) (stating "[t]he Superior Court Criminal Rules shall apply in juvenile offense proceedings when not inconsistent with these rules and applicable statutes").
[7] Because we reverse and remand, we do not address SW's claims of ineffective assistance of counsel.