IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50432-4-II |
| Respondent, | |
| v. | |
| M.J.T., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — MJT appeals from his adjudications of guilt for second degree taking a motor vehicle without permission, driving under the influence of intoxicants, reckless driving, and second degree driving while in suspended or revoked status. MJT contends that the trial court erred by failing to enter written findings of fact and conclusions of law following a CrR 3.5 hearing. We affirm.

FACTS

In January 2017, 16-year-old MJT had an order in effect that revoked his driving privileges. Cheryl Nelson is MJT's mother. On January 13, MJT took Nelson's vehicle without her permission. MJT drove Nelson's vehicle at a high rate of speed through a stop sign and entered the oncoming traffic lane. Two vehicles had to veer to avoid colliding with MJT.

Gig Harbor Police Officer Kevin Goss conducted a traffic stop and contacted MJT. Goss asked MJT why he was driving like a maniac, and MJT said, "[H]e was being stupid." Report of Proceedings (RP) (Mar. 21, 2017) at 55. Goss told MJT to provide his driver's license, registration,

and proof of insurance; MJT told Goss that he did not have a driver's license. Goss detected the odor of intoxicants and noticed that MJT had red, watery eyes and slurred speech. MJT agreed to perform field sobriety tests. When MJT exited the vehicle, Goss saw that "he was very unsteady and wobbly on his feet." RP (Mar. 21, 2017) at 56. Goss arrested MJT, advised him of his *Miranda*[1] rights, and transported him to the police station.

MJT refused to take a breath test to determine his breath alcohol concentration. MJT provided a blood sample after Officer Goss obtained a search warrant for the blood draw. The blood sample showed that MJT had a blood alcohol concentration of 0.19.

The State charged MJT with second degree taking a motor vehicle without permission, driving under the influence of intoxicants, reckless driving, and second degree driving while in suspended or revoked status. The matter proceeded to a juvenile court bench trial at which MJT stipulated to facts supporting his guilty adjudications for driving under the influence, reckless driving, and second degree driving while in suspended or revoked status.

Before the start of trial, the juvenile court held a CrR 3.5 hearing to determine the admissibility of MJT's statements. Officer Goss was the only witness to testify at the CrR 3.5 hearing. The juvenile court orally ruled that MJT's pre-*Miranda* statements were admissible at trial because those statements were made before he was in custody for *Miranda* purposes. The juvenile court also orally ruled that MJT had invoked his right to remain silent and, thus, his post-*Miranda* statements were inadmissible at trial with the exception of a statement MJT made

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

spontaneously in the absence of a question. The juvenile court did not enter written findings and conclusions regarding its CrR 3.5 ruling at this time.

Following the bench trial, the juvenile court adjudicated MJT guilty of all charges. After MJT filed his opening brief in this appeal, the trial court entered written findings of fact and conclusions of law supporting its CrR 3.5 ruling.

ANALYSIS

MJT contends that we must remand to the juvenile court to enter written findings of fact and conclusions of law as required under CrR 3.5. Because the juvenile court entered the required findings and conclusions while this appeal was pending and because MJT does not claim that the findings of fact and conclusions of law were tailored to any issue raised in this appeal or that the delayed entry otherwise caused prejudice, we find no error.

A trial court is required to enter written findings of fact and conclusions of law following a CrR 3.5 hearing.[2] The requirements of CrR 3.5 apply to juvenile proceedings under JuCR 1.4(b). *State v. S.A.W.*, 147 Wn. App. 832, 836 n.6, 197 P.3d 1190 (2008). But a trial court may submit written findings and conclusions while an appeal is pending "'if the defendant is not prejudiced by the belated entry of findings.'" *State v. Landsiedel*, 165 Wn. App. 886, 894, 269 P.3d 347 (2012) (quoting *State v. Cannon*, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996)). Accordingly, to demonstrate reversible error based on the late entry of CrR 3.5 findings and conclusions, MJT must show that the findings and conclusions were tailored to issues raised in his appeal or that he

---

[2] CrR 3.5(c) provides, "After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor."

No. 50432-4-II

was otherwise prejudiced by the late entry. *State v. Quincy*, 122 Wn. App. 395, 398, 95 P.3d 353 (2004).

Here, the juvenile court entered its written findings of fact and conclusions of law after MJT filed his opening brief. The juvenile court's belated findings and conclusions are consistent with its oral ruling following the CrR 3.5 hearing, and MJT does not claim that the delayed entry caused him prejudice. *See Landsiedel*, 165 Wn. App. at 893-94 (finding no prejudice when late-filed findings and conclusions were consistent with the trial court's oral ruling). Therefore, we find no error in the juvenile court's late entry of written findings and conclusions. Accordingly, we affirm MJT's juvenile adjudications of guilt.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MELNICK, P.J.

SUTTON, J.

4