**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  59479-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ANTHONY DAVID JENKINS, | |
| Appellant. | |

PRICE, A.C.J. — Anthony D. Jenkins appeals his conviction for possession of methamphetamine with intent to deliver.  He argues that his conviction should be reversed because the trial court erroneously denied his timely notice of disqualification.  We reverse and remand for a new trial.[1]

FACTS

In January 2023, the Grays Harbor County Drug Task Force received a tip that Jenkins was selling methamphetamine.  At the time, Jenkins was being supervised by the Department of Corrections.  After the tip, Jenkins was arrested in his home for violating his community custody conditions.  During the arrest, law enforcement found drugs and drug paraphernalia, including three scales and over 80 grams of methamphetamine.  In March 2023, the State charged Jenkins with possession of methamphetamine with intent to deliver.

---

[1] Jenkins also argues that he received ineffective assistance of counsel and that the State committed prosecutorial misconduct.  However, because we are reversing based on the trial court's denial of Jenkins' notice of disqualification, we do not further discuss Jenkins' additional claims.

Jenkins made his first appearance before the trial court on April 17, 2023. During this hearing, the presiding judge notified Jenkins that she had previously prosecuted Jenkins earlier in her career. She explained,

> I think that I handled some of your prior cases. It's been quite a while. But I just want to bring that to your attention. You have the right to disqualify me and ask that your case be heard by another judge; so you should certainly discuss that [with defense counsel]. And if—I am not—I don't have any particular recollection of the cases other than the name rang a bell. So I am not going to recuse myself, but if you want to disqualify me, I would be happy to transfer it to another judge. So if you would talk to [defense counsel] and let the Court know at your next hearing, I would appreciate that.

Verbatim Rep. of Proceedings (VRP) (Apr. 17, 2023) at 5.

Approximately two months later, on June 14, the same judge presided over an omnibus hearing, and the judge repeated to defense counsel that she had previously prosecuted Jenkins and that she wanted to make sure defense counsel was aware. Defense counsel responded that Jenkins had only told him this on that same day. The judge told defense counsel that he could keep discussing with Jenkins and decide later whether to disqualify her:

> All right. And I will—because I—you obviously had a chance to talk to him. If—if in your conversations between now and his next hearing, although it will be transferring to Judge Mistachkin in any event as of July 1, I would be happy to honor that if he wants to go that route. That—I'm not going to—whatever decision I make today I won't bind Mr. Jenkins to for his disqualification, so.

VRP (June 14, 2023) at 7.

At the same June 14 hearing, defense counsel requested a continuance so that Jenkins could continue discussing his case with him. The State did not object. VRP (June 14, 2023) at 10.[2] The judge granted the continuance.

On August 7, another omnibus hearing was held before the same judge. Defense counsel presented the trial court with a "CrR 3.5 Stipulation and Order Declaring Statements Admissible" that was signed by the prosecutor, defense counsel, and Jenkins himself. The stipulation and order stated, in part,

> X  Statements to law enforcement officers were noncustodial or spontaneous;
>
> Therefore, IT IS HEREBY ORDERED, that the statements of the Defendant are admissible pursuant to CrR 3.5, upon stipulation of the parties.

Clerks Papers (CP) at 4.

Defense counsel explained that he had gone over the consequences of this stipulation with Jenkins and that Jenkins had understood and agreed to it. The judge engaged in the following colloquy with Jenkins:

> The Court: I have before me a document entitled CrR 3.5 stipulation and an order declaring statements admissible. Did you go over this with your attorney?
>
> [Jenkins]: I did, Your Honor.
>
> The Court: And are you agreeing that any statements you may have made about this case to law enforcement were made either spontaneously by you or while you were not in custody?
>
> [Jenkins]: Yes, ma'am.
>
> The Court: And you understand that by stipulating to that, those statements are admissible at trial, at least pursuant to that court rule?

---

[2] In the course of discussing defense counsel's request for a continuance, the trial court turned to the State and said, "I'll—I should ask the State. Mr. [Prosecutor], do you wish to be heard?" VRP (June 14, 2023) at 9-10. The State responded, in part, "I don't want to—I'm not going to object to that." VRP (June 14, 2023) at 10.

[Jenkins]: Yes, ma'am.

The Court: All right. I will accept the stipulation for filing.

VRP (Aug. 7, 2023) at 17-18.[3]

Trial was scheduled for September 6. The morning of the first day of trial, Jenkins filed a notice of disqualification against the trial judge. Defense counsel explained that Jenkins had "concerns" about the fact that the trial court judge had previously prosecuted him. VRP (Sept. 6, 2023) at 21. The State did not object to defense counsel's notice.

The judge denied the disqualification. The judge reasoned that Jenkins' motion was untimely because of her decision on the June 14 continuance:

> Jenkins' first appearance, and the minutes comport with my memory, that I did bring this up with Mr. Jenkins and told him that I was not going to recuse myself, but if he asked for [a] different [] judge to hear his case, that I would accept the disqualification.
>
> On June 14th, with [defense counsel] present, I again addressed that I handled those previous cases. The clerk's minutes indicate that both the defendant and counsel had no reservation and were not asking me to recuse myself.
>
> Also *at the June 14 hearing, I heard a motion to continue and found good cause; that is clearly a discretionary ruling.*
>
> . . . .
>
> So Mr. Jenkins, I can understand your concern, but the time to raise that has passed. And so, you know, my—I have no particular desire to see this case come out one way or another. I simply want to ensure that everyone follows the rules and you receive a fair trial that you are entitled to. So I would enter an order denying that.

VRP (Sept. 6, 2023) at 22-24 (emphasis added).

---

[3] On the same day, the trial court entered the parties' jointly-proposed omnibus order, which stated that Jenkins would "stipulate, in writing, by separate document, that his/her statements are admissible pursuant to CrR 3.5." CP at 70.

The case proceeded to a jury trial. Jenkins was convicted of one count of possession of methamphetamine with intent to deliver.

Jenkins appeals.

ANALYSIS

Jenkins argues that the trial court erred when it denied his notice to disqualify the judge from presiding over his trial. He contends that the denial of his request violated Washington law as well as his due process rights.

I. LEGAL PRINCIPLES

A. DISQUALIFICATION OF A JUDGE UNDER RCW 4.12.050

A party who believes that they cannot have a fair trial before a particular judge may disqualify that judge from hearing a matter under RCW 4.12.050 by filing a notice of disqualification.[4] *Godfrey v. Ste. Michelle Wine Estates Ltd.*, 194 Wn.2d 957, 961, 453 P.3d 992 (2019). A timely filed notice of disqualification must be granted, and the case must be transferred to another judge. *Id.* There is no need for the party to substantiate their claim of prejudice. *State v. Gentry*, 183 Wn.2d 749, 759, 356 P.3d 714 (2015). "Absent extraordinary circumstances, the prejudice established by RCW 4.12.050 is, in and of itself, *harmful* prejudice. A trial court's failure to grant the requested change is a basis for reversal." *State v. Lile*, 188 Wn.2d 766, 781, 398 P.3d 1052 (2017) (internal citation omitted).

---

[4] What RCW 4.12.050 now calls a "notice of disqualification" was previously labeled an "affidavit of prejudice." *E.g.*, *Godfrey v. Ste. Michelle Wine Estates Ltd.*, 194 Wn.2d 957, 961-62, 453 P.3d 992 (2019).

To be timely, the party must file their notice of disqualification "before the judge has made any discretionary ruling in the case." RCW 4.12.050(1)(a). Whether a judge has made a discretionary decision under RCW 4.12.050 is a question of law that we review de novo. *Lile*, 188 Wn.2d at 776.

When determining whether a decision is discretionary "the substance and impact of a request is the most relevant consideration . . . regardless of what form the request takes." *Id.* at 778 (emphasis omitted). The rationale behind this rule is "to avoid the absurd result of parties invoking the court's discretion and then waiting to see the disposition of the judge before asserting the right . . . ." *State v. Parra*, 122 Wn.2d 590, 599, 859 P.2d 1231 (1993).

In *Parra*, our Supreme Court acknowledged that a trial court's acceptance of stipulations between the parties is not generally a discretionary decision so long as this acceptance does not alert the parties to the judge's possible disposition toward their case. *Id.* at 600. The *Parra* court explained that "[s]tipulations are favored by courts and will be enforced unless good cause is shown to the contrary." *Id.* at 601. For example, parties will stipulate to issues such as "admissibility of evidence, discovery, identities of witnesses, and anticipated defenses." *Id.* at 600. In general, acceptance of an agreed stipulation is not discretionary so long as it affects "only the rights or convenience of the parties" and does "not involv[e] any interference with the duties and functions of the court . . . ." *Id.* at 603; *see also Austin v. King County*, 31 Wn. App. 2d 523, 528, 551 P.3d 446 (2024) (relying on *Parra* to hold that trial court's acceptance of a stipulated motion to amend a complaint was not discretionary because the decision was mandatory under CR 15(a) and "only impacted the parties and did not at all affect the trial court's functions"). In these instances, the parties are not barred from later disqualifying the judge because not only does

6

entering the stipulation not forecast the judge's disposition toward the case, but the stipulation "encompass[es] matters over which the parties have jurisdiction," making it so that there is "no reason" for the trial court to get involved. *Id.* at 603. In explaining this reasoning, the *Parra* court made the distinction between the trial court's acceptance of a stipulation and a party declining to object to the other's motion, because the latter requires the judge to determine whether to grant or deny the motion. *Id.* at 600-01.

Subsequent to *Parra*, in *Lile*, our Supreme Court elaborated on these principles to explain that, even in the face of an agreement of the parties, acceptance by the trial court could be a discretionary decision if the " 'duties and functions' " of the court would be affected. 188 Wn.2d at 778 (quoting *Parra*, 122 Wn.2d at 603). The issue in *Lile* was whether a trial court's decision to grant or deny a request for an unopposed continuance is discretionary. *Id.* at 780. In holding that such a decision *is* discretionary, the *Lile* court clarified that although *Parra* said that whether the parties agreed on a particular issue is a factor in determining whether a decision is discretionary, the "substance" of a decision and its impact on the " 'duties and functions of the court' " are "the most relevant" considerations in this assessment. *Id.* at 778 (quoting *Parra*, 122 Wn.2d at 603). It explained that "[c]ontinuances, even when unopposed, have a significant impact on the efficient operation of our courts and the rights of the parties, particularly in criminal proceedings." *Id.* In addition to considering the needs of the parties, the trial court " 'must consider various [other] factors, such as diligence, materiality, due process, a need for orderly procedure, and the possible impact of the result on the trial.' " *Id.* at 776 (internal quotation marks omitted) (quoting *In re Recall of Lindquist*, 172 Wn.2d 120, 130, 258 P.3d 9 (2011)).

Shortly after *Lile*, amendments to RCW 4.12.050(2) went into effect that limited the impact of *Lile*'s holding. *See Godfrey*, 194 Wn.2d at 962 n.4. Under the new version of the statute, the legislature expressly listed certain decisions that "may involve discretion" but do not cause a party to lose their right to disqualify a judge. *Compare* former RCW 4.12.050 (2016) *with* RCW 4.12.050.[5] This list includes ruling on "an agreed continuance":

> [a]rranging the calendar, setting a date for a hearing or trial, *ruling on an agreed continuance*, issuing an arrest warrant, presiding over criminal preliminary proceedings under CrR 3.2.1, arraigning the accused, fixing bail, and presiding over juvenile detention and release hearings under JuCR 7.3 and 7.4.

RCW 4.12.050(2) (emphasis added). Thus, notwithstanding *Lile*'s holding, our legislature has determined that a party preserves their right to disqualify a trial judge even when the judge has made a discretionary ruling on an agreed continuance.

## B. CrR 3.5 HEARINGS

CrR 3.5(a) provides a uniform procedure regarding the admissibility of a defendant's statement. *See State v. S.A.W.*, 147 Wn. App. 832, 837, 197 P.3d 1190 (2008). CrR 3.5(a) requires in relevant part:

> When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible.

The purpose of a CrR 3.5 hearing is to allow the trial court to rule on "whether a custodial statement was obtained with proper regard for the defendant's rights," and to do so in the absence of the jury. *State v. Viney*, 52 Wn. App. 507, 510, 761 P.2d 75 (1988). This procedure guards

---

[5] Prior to 2017, the statute listed several types of decisions that would not prevent a notice of disqualification, such as an arraignment or bail setting, but an "agreed continuance" was not on the list. Former RCW 4.12.050 (2016).

against due process problems that would arise if the jury were to hear evidence of an involuntary statement and "promotes judicial efficiency by insulating the jury from tainted evidence, thereby avoiding mistrials and continuances." *S.A.W.*, 147 Wn. App. at 837; *State v. Fanger*, 34 Wn. App. 635, 637, 663 P.2d 120 (1983). A CrR 3.5 hearing is a constitutional "threshold determination," and is "not the same as a determination that the statement is otherwise admissible under the Rules of Evidence." *Viney*, 52 Wn. App. at 510. Unlike the admission of evidence under the evidence rules, during a CrR 3.5 hearing, the trial court is limited to addressing "the circumstances under which the statement was made," rather than the contents of the statement. *Id.* Thus, even if a trial court determines a statement is admissible under CrR 3.5, the trial court is not precluded from later deciding the statement is inadmissible under the evidence rules. *Id.*

In general, a CrR 3.5 hearing is mandatory, but a defendant may stipulate to the voluntariness and custodial nature of their statements, thereby avoiding the need for a CrR 3.5 hearing. *See Fanger*, 34 Wn. App. at 637; *State v. Nogueira*, 32 Wn. App. 954, 957-58, 650 P.2d 1145 (1982).

A defendant's attorney may also stipulate to the admissibility of evidence under CrR 3.5 on the defendant's behalf. *See Fanger*, 34 Wn. App. at 637. CrR 3.5 hearings are procedural devices, and attorneys are impliedly authorized to stipulate to and waive procedural matters. *Id.*

## II. APPLICATION

Here, there are two trial court decisions that could arguably implicate Jenkins' ability to file a notice of disqualification: (1) the June 14 decision to accept an agreed continuance, and (2) the August 7 decision to accept the parties' CrR 3.5 stipulation. Jenkins argues that neither of these decisions precluded his notice of disqualification. We agree.

9

A. GRANT OF AGREED CONTINUANCE ON JUNE 14

The trial court identified the June 14 continuance as its basis to deny Jenkins' notice of disqualification, stating, "[A]t the June 14 hearing, I heard a motion to continue and found good cause; that is clearly a discretionary ruling." VRP (Sept. 6, 2023) at 23.

Although *Lile* characterized this type of decision as preclusive of a notice of disqualification, RCW 4.12.050(2) was subsequently revised to explicitly provide that ruling on an agreed continuance (even if the decision may involve some discretion) does not bar a party from disqualifying the judge presiding over their case. Thus, the trial court's June 14 ruling did not make Jenkins' notice of disqualification untimely.

B. CrR 3.5 STIPULATION ON AUGUST 7

The second potentially discretionary decision the trial court made was the trial court's decision to accept the parties' CrR 3.5 stipulation on August 7. The State argues that this was a discretionary decision because the trial court "had to decide whether [Jenkins] made a valid waiver of his constitutional rights." Br. of Resp't at 21.

Jenkins responds that the trial court's August 7 decision was not discretionary. Jenkins argues that "the [S]tate inaccurately describes what transpired at the [August 7] hearing" by claiming that the judge "closely questioned" him about his rights. Reply Br. at 3. He contends that "none of the [trial court's] questions directly addressed [his] Fifth Amendment right to be free from compelled self-incrimination" nor did they address "the voluntariness of his statements to investigators." Reply Br. at 4. According to Jenkins, "the court was not required to assess the voluntariness of the statements because [he] stipulated to that fact." Reply Br. at 5.

We agree that the trial court's acceptance of the parties' CrR 3.5 stipulation did not prevent Jenkins from filing the notice of disqualification. The parties resolved, out of court, the limited issue of whether Jenkins' statements to law enforcement were "noncustodial or spontaneous" and were therefore "admissible pursuant to CrR 3.5." CP at 4. This is exactly the type of stipulation, like ones involving admissibility of evidence, discovery, and witnesses, that *Parra* says are "favored by the courts." 122 Wn.2d at 601. And considering the trial court's minimal colloquy with Jenkins, the acceptance of the stipulation would not have alerted either party "to any possible disposition that [the] judge may have [had]." *Id.* at 600.

But more importantly, the "substance" of this evidentiary stipulation had no impact on the duties and functions of the trial court. *Lile*, 188 Wn.2d at 778. Unlike the decision of whether to grant a continuance, which requires the trial court to consider "diligence, materiality, due process, a need for orderly procedure, and the possible impact of the result on the trial," stipulating to the fact that Jenkins' statements to law enforcement "were noncustodial or spontaneous" affected "only the rights and convenience of the parties." CP at 4; *Parra*, 122 Wn.2d at 603. Thus, the August 7 acceptance of the parties' CrR 3.5 stipulation did not preclude Jenkins from disqualifying the judge.[6]

---

[6] Moreover, the parties' CrR 3.5 stipulation would not have precluded the trial court from later determining the statements to be inadmissible under the evidence rules. *See Viney*, 52 Wn. App. at 510 (explaining that "[f]urther analysis at trial of admissibility under the Rules of Evidence is not foreclosed" by a CrR 3.5 hearing determination).

No. 59479-0-II

CONCLUSION

We acknowledge that the trial court had repeatedly invited Jenkins (and his counsel) to decide whether he would file a notice of disqualification in this case and that it was only when trial was imminent did Jenkins actually file his notice. Under these specific facts, this maneuver could potentially be characterized as intentionally designed to obtain a continuance through 9th inning gamesmanship. Nevertheless, because the notice of disqualification was not untimely under the law we are compelled to follow, Jenkins retained his ability to disqualify the judge as a matter of right. The trial court's denial of his motion requires reversal. *Lile*, 188 Wn.2d at 781.

Accordingly, we reverse and remand for a new trial.[7]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, A.C.J.

I concur:

GLASGOW, J.

---

[7] Because we hold that Jenkins' conviction should be reversed based on RCW 4.12.050, we do not address his constitutional arguments. *See M.G. by Priscilla G. v. Yakima Sch. Dist. No. 7*, 2 Wn.3d 786, 794, 544 P.3d 460 (2024).

12

CRUSER, J. (concurring)—I concur but write separately to state my understanding of the majority opinion. Our holding rests on the fact that in this case, the defendant did not merely *waive* his right to a hearing on the admissibility of his statements pursuant to CrR 3.5, but, rather, formally stipulated to the admission of his statements to law enforcement at trial. This distinction matters because if this case involved mere waiver of Anthony Jenkins' right to a CrR 3.5 hearing, the trial court's decision whether to accept such a waiver is, in my view, a discretionary act. In contrast, under *Parra*, cited by the majority, the trial court's acceptance of a stipulation on the admission of evidence is a nondiscretionary act and would, as in this case, not trigger the bar on acceptance of a notice of disqualification. *See State v. Parra*, 122 Wn.2d 590, 601, 859 P.2d 1231 (1993).[8]

Based on this feature of the case, I concur with the majority's decision in spite of my distaste for what I consider to be a clearly disingenuous use of the disqualification statute. The trial judge gave Jenkins and his counsel numerous reminders that she had been involved in prosecuting Jenkins in the past and invited them at several court hearings to file a notice of disqualification if they believed one was necessary. It was only on the morning of trial that Jenkins finally lodged his "concern[ ]"[9] that he had been previously prosecuted by the judge. This was plainly a gambit to obtain a continuance on the day of trial without having to make what would have otherwise been

---

[8] Although not at issue in this case, the *refusal* of a trial court to accept an evidentiary stipulation would, in my view, be considered a discretionary act. This is so because, as our supreme court noted in *Parra*, a trial court's rejection of a stipulation can only be made upon a showing of good cause. 122 Wn.2d at 601 (citing *Smyth Worldwide Movers, Inc. v. Whitney*, 6 Wn. App. 176, 178, 491 P.2d 1356 (1971)).

[9] Verbatim Rep. of Proc. (Sept. 6, 2023) at 21.

an untimely motion. I appreciate the majority's acknowledgment of this fact. Begrudgingly, I concur with the majority's decision to reverse.

CRUSER, J.